UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| LARRY PATTERSON | CIVIL ACTION NO. 06-1348 |
|---|---|
| VS. | SECTION P |
| LOUISIANA CORRECTIONS SERVICES, INC., ET AL. | CHIEF JUDGE HAIK<br>MAGISTRATE JUDGE METHVIN |

## REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* on August 7, 2006 by *pro se* plaintiff Larry Patterson. Plaintiff is an inmate in the custody of the Alabama Department of Corrections (ADOC). He is presently incarcerated at the Kilby Corrections Center, an ADOC facility in Mt. Meigs, Alabama, however, when this suit was filed, he was an ADOC convict being housed at the Louisiana Corrections Services, Inc. (LCS) facility in Pine Prairie, Louisiana.

Patterson complains that he was denied prompt and adequate medical care while incarcerated at the LCS facility in Basile, Louisiana. He names as defendants LCS Warden Gary Copes, Sergeant Ceasar, Sergeant "John Doe," Nurse Ledet, Captain Dowell, Nurse M. Maxie, Dr. Tassin, and Sergeant Stienmet. Patterson seeks a declaratory judgment, compensatory and punitive damages, the appointment of counsel, and injunctive relief.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DENIED** and **DISMISSED** because plaintiff failed to exhaust available administrative remedies prior to filing suit. It is further

recommended plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order [doc. 6] be **DENIED** as **MOOT.**

*Background*

Plaintiff is an inmate in the custody of the ADOC. On April 22, 2006 he was incarcerated at the LCS facility in Basile, Louisiana. Plaintiff alleges that on that day, he injured his leg while playing softball in the facility's recreation yard. Immediately following the injury, plaintiff approached Sgt. Ceasar and alerted him to his injury. Ceasar ordered plaintiff to return to his dorm and advised plaintiff that he would contact the medical department. [doc. 1-1, paragraph XIII, p. 4]

Plaintiff returned to his dorm as instructed. Plaintiff experienced pain swelling. When it was time for supper, plaintiff walked some 300 yards to the dining hall. Upon his return to the dorm following this meal, he was asked by Sergeant "John Doe" if he wanted to consult with the "pill call" nurse, Nurse Ledet, who happened to be in plaintiff's dorm at that time. Sergeant "John Doe" brought plaintiff to the lobby. Plaintiff advised Ledet that he believed his leg was broken. Ledet "glanced down" at plaintiff's leg and agreed that it was probably fractured, but she kept walking and provided no assistance. Plaintiff requested medication for pain and Nurse Ledet provided "one pill of something and walked off." Sergeant "John Doe" then returned plaintiff to his dorm. [*id.*, p. 5]

On the following day, Sunday, April 23, 2006, plaintiff requested medical attention from Captain Dowell. Captain Dowell assured plaintiff that he would "check on it." However, plaintiff was provided no medical attention that day. [*id.*]

On April 24, 2006 plaintiff asked the "pill call" nurse, Nurse Maxie, to examine his

injury. She advised that she could not perform an examination at "pill call." Plaintiff then requested Advil or Tylenol for pain but Maxie advised that she could not provide that medication. Later that evening plaintiff submitted a "sick call" slip. [*id*.]

On the following day, April 25, 2006, plaintiff was summoned to the medical department where he was initially examined by Nurse Maxie who speculated that plaintiff had either a sprain or fracture and should be examined by a physician. Plaintiff requested crutches to help him walk back and forth from his dorm to the dining hall. Maxie offered plaintiff a cell in lock-down, but plaintiff declined the offer. [*id*.]

Approximately two hours later, plaintiff was summoned back to the medical department and examined by Dr. Tassin and Nurse Maxie. Dr. Tassin performed a physical examination and concluded that plaintiff had sustained a fracture. When plaintiff told Dr. Tassin that he had sustained his injury on April 22, the physician asked plaintiff why he waited so long before seeking treatment. Plaintiff recounted his efforts to obtain care and finally advised Dr. Tassin that he could get no help until he filled out a sick call slip. [*id*., p. 6]

Dr. Tassin ordered an x-ray examination and on the following day, April 26, 2006, plaintiff was transported to the Lafayette Medical Center. A series of x-ray examinations were conducted. An unknown physician advised plaintiff that his leg was indeed broken and that a soft cast would be applied and kept on his leg for two weeks because of the swelling. This unknown physician opined that surgery would be needed at some point in time. [*id*. pp. 6-7]

Plaintiff returned to the Medical Center approximately two weeks later. The soft cast was removed and additional x-ray examinations were conducted. Dr. Fu examined the x-rays and concluded that the fracture was healing and that plaintiff would not need to undergo surgery. The

soft cast was replaced with a hard cast. [*id.*, p. 7]

On some unspecified date plaintiff was summoned to the LCS medical department by Nurse Maxie who advised plaintiff that if surgery would be needed, plaintiff would have to be placed in lock-down during the period of recuperation. [*id.*]

Approximately four weeks later plaintiff was returned to the Lafayette Medical Center. The hard cast was removed and plaintiff's injury was again x-rayed. The examining physician concluded that the leg was healing and replaced the hard cast with a walking boot which he advised plaintiff to wear for an additional period of 4 - 5 weeks. [*id.*]

As of August 1, 2006, the date plaintiff signed his pleadings, plaintiff claimed that he was still experiencing pain and swelling. [*id.*]

Plaintiff did not utilize the prisoner grievance procedure available at LCS "... because it was an immediate emergency, the grievance procedure would have taken several days or weeks for a response on the first level..." and he "... was transferred from ... Basile to LCS Pine Prairie..." and since the "... incident happened on a Saturday, it would have been at least 3 (three) days before the first business day, if it would have been looked at that soon" [and] "plaintiff would have faced irreparable harm by waiting on grievance procedure." [*id.*, p. 8]

On August 7, 2006 plaintiff filed a Motion for Appointment of Counsel. [doc. 2]

On August 24, 2006 plaintiff filed an Affidavit in Support of Preliminary Injunction and Temporary Restraining Order seeking "... protection from defendants: La. Corrections Service, Inc., Warden Gary Copes, and all LCS employees and medical staff of LCS, Inc. Basile and Pine Prairie facilities..." [doc. 6, p. 1] Plaintiff further prayed for an order restraining the defendants "... from harassment, illegally segregated without probable cause or harmed in any way as in

retaliation of this civil action suit. Plaintiff also ask for immediate transfer back to custody of Alabama D.O.C. due to prior history of abuse, brutality to other inmates, also fear for his safety and harm resulting from this civil action filed against LCS and employees." [*id*., p. 4]

On September 15, 2006 plaintiff advised that he had been returned to LCS Basile. [doc. 8] On October 9, 2006 plaintiff advised that he had been transferred to the Kilby Correctional Facility, Mt. Meigs, Alabama. [doc. 9]

*Law and Analysis*

*1. Motion for Appointment of Counsel [doc. 2]*

Congress has not specifically authorized courts to appoint counsel for plaintiffs proceeding under 42 U.S.C. §1983. "Generally no right to counsel exists in §1983 actions [but] appointment of counsel should be made as authorized by 28 U.S.C. §1915 where 'exceptional circumstances' are present." *Robbins v. Maggio*, 750 F.2d. 405 (5th Cir. 1985). Pursuant to 28 U.S.C. §1915(e)(1), federal courts are given the power to request that an attorney represent an indigent plaintiff.

In the case of *Mallard v. United States District Court for the Southern District*, 490 U.S. 296, 301-302, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989) the United States Supreme Court held that federal courts can only request that an attorney represent a person unable to employ counsel because federal courts are not empowered under 28 U.S.C. §1915(e)(1) to make compulsory appointments.

Although courts can request that an attorney represent an indigent plaintiff, the court is not required to make this request in the absence of "exceptional circumstances." See *Ulmer v. Chancellor*, 691 F.2d. 209, 212 (5th Cir. 1982) and *Jackson v. Cain*, 864 F.2d. 1235, 1242 (5th

Cir. 1989). No precise definition of "exceptional circumstances" is available, but the United States Courts of Appeal have provided a litany of factors for lower courts to consider in determining whether the plaintiff is entitled to have the court request that counsel assist him in his suit. It is proper for the court to consider the following factors: the type and complexity of the case; the plaintiff's ability to adequately present and investigate his case; the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of evidence and cross-examination; and the likelihood that appointment will benefit the petitioner, the court, and the defendants by "shortening the trial and assisting in just determination." See *Parker v. Carpenter*, 978 F.2d. 190 (5th Cir. 1992), citing *Murphy v. Kellar*, 950 F.2d. at 293, n.14; *see also Ulmer*, 691 F.2d. at 213, and *Jackson*, 864 F.2d. at 1242.

Additionally, a court may consider whether a plaintiff has demonstrated the inability to secure private counsel on his own behalf. *See Jackson*, 864 F.2d. at 1242; *Ulmer*, 691 F.2d. at 213. Plaintiff is not excused from trying to procure counsel for himself.

In his civil rights complaint, plaintiff alleges that prison officials have been deliberately indifferent to his serious medical needs. The claim is typical of those often asserted in civil rights litigation and is not complex. Further, as is shown hereinafter, plaintiff admits that he did not exhaust administrative remedies prior to filing suit. This admission is fatal to plaintiff's suit and dismissal on that basis has been recommended. Thus, appointment of counsel at this stage would be of no benefit to petitioner or the court.

Finally, plaintiff has failed to demonstrate that he has even attempted to procure counsel on his behalf.

Accordingly, plaintiff's request for appointment of counsel should be denied as the

allegations contained in the complaint and plaintiff's motion do not demonstrate "exceptional circumstances" which would warrant the appointment of counsel.

## 2. *Preliminary Injunction and Temporary Restraining Order [doc. 6]*

Plaintiff has requested injunctive relief. He fears retaliation from the defendants and he requests that they be restrained from such retaliatory acts. Finally, he requests an immediate transfer back to the physical custody of the ADOC.

As shown above, sometime prior to October 9, 2006 he was returned to Alabama and he is now incarcerated at the Kilby Corrections Center in Mt. Meigs, Alabama. [doc. 9]

The transfer of a prisoner out of an allegedly offending institution generally renders his claims for injunctive relief moot. *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (*per curiam*) (plaintiff's individual suit challenging parole procedures mooted by release absent "demonstrated probability" that he would again be subject to parole board's jurisdiction); *Cooper v. Sheriff, Lubbock County, Tex.*, 929 F.2d 1078, 1081 (5th Cir.1991) (*per curiam*) (holding that prisoner transferred out of offending institution could not state a claim for injunctive relief).

In order for plaintiff's claims to remain viable, he would have to establish that the possibility of a transfer back to LCS would make his claims capable of repetition yet evading review. See *Hardwick v. Brinson*, 523 F.2d 798, 800 (5th Cir.1975).

Plaintiff must show either a "demonstrated probability" or a "reasonable expectation" that he would be transferred back to LCS or released and then re-incarcerated there. *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982). At its most lenient, the standard is not "mathematically precise" and requires that plaintiff show a "reasonable

likelihood" of repetition. *Honig v. Doe*, 484 U.S. 305, 318-19, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). Plaintiff has made no such showing.

Further, that which he seeks, has been granted. He is now incarcerated in Alabama as he requested. His request for injunctive relief is moot and dismissal on that ground is therefore recommended.

*3. Initial Review*

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but, they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff has provided a complaint which thoroughly outlines his claims for relief. Plaintiff need not be afforded an opportunity for further amendment. Plaintiff is not entitled to the relief he seeks because he has failed to exhaust available administrative remedies prior to filing suit.

*4. Exhaustion of Administrative Remedies*

42 U.S.C. §1997e, was amended on April 26, 1996 by the Prison Litigation Reform Act (PLRA). As amended, § 1997e(a) mandates exhaustion of administrative remedies prior to filing a civil rights complaint concerning prison conditions. The statute provides,

> (a) Applicability of Administrative Remedies – <u>No action</u> shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility <u>until such administrative remedies as are available are exhausted.</u> (emphasis supplied)

This is a prison condition case, exactly the type of case which can best be resolved by the prison officials without resort to judicial action. Plaintiff acknowledged the existence of an

administrative remedies procedure at LCS but he also admitted that he failed to exhaust administrative remedies before filing this lawsuit as required by 42 U.S.C. §1997e(a). [doc. 1-1, at page 8, "Plaintiff ... did not use the prisoner grievance procedure available at LCS ... because it was an immediate emergency..."]

Plaintiff claims that he is exempt from the exhaustion requirement. He argues that he was not required to exhaust his administrative remedies, because he was faced with an emergency and "... the grievance procedure would have taken several days or weeks for a response..." [*id*.]

Plaintiff has raised no valid defense for failing to exhaust administrative remedies. See *Wright v. Hollingsworth*, 260 F.3d 357, 358 n. 2 (5th Cir.2001) (holding that the exhaustion requirement "is not jurisdictional and may be subject to certain defenses such as waiver, estoppel or equitable tolling"). Instead, he claims that he is exempted from the exhaustion requirement because of the emergent nature of his complaint. The Supreme Court has noted that "<u>we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise</u> ... Here, we hold only that Congress has provided in § 1997e(a) that <u>an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues</u>." *Booth v. Churner*, 532 U.S. at 741 n. 6; *Clifford v. Gibbs*, 298 F.3d 328, 332 (5th Cir.2002) (noting that the current version of § 1997e(a) provides for no discretion to excuse exhaustion); *Woodford v. Ngo*, — U.S. —, 126 S.Ct. 2378, 2382-2389 (2006)(the exhaustion required by 1997e(a) is "proper exhaustion" meaning that the inmate must complete whatever administrative review steps are provided in accordance with the applicable procedural rules, without any exception for untimely, unavailable, or procedurally defective attempts at

exhaustion.)

In short, plaintiff is not exempt from the PLRA's exhaustion requirement with respect to his present cause of action. Under Federal law, plaintiff must exhaust the administrative remedy procedure before proceeding herein. The statute, as shown above, allows no exceptions. See also *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002), ("... we hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. (citation omitted)" )

The plain language of the statute precludes any further action on plaintiff's claims until he has fully exhausted the administrative remedy procedure. See also *Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir. 1998) (§1997e(a) "plainly requires that administrative remedies be exhausted before the filing of a §1983 suit, rather than while the action is pending... [t]o hold otherwise would encourage premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the federal courts some relief from frivolous prisoner litigation."); *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir.1998), *cert. denied*, 526 U.S. 1133, 119 S.Ct. 1809, 143 L.Ed.2d 1012 (1999) (dismissal for failing to exhaust administrative remedies is justified "as a deterrent to premature filing by...other potential litigants, thus serving the Congressional purpose of providing relief from frivolous prisoner litigation...").

Because plaintiff violated the PLRA by the premature filing of his complaint, dismissal under the *in forma pauperis* statute is appropriate, and serves as *res judicata* with respect to plaintiff's *IFP* status. Accordingly, plaintiff may not re-file as a pauper even if he does

ultimately exhaust his administrative remedies.

> Dismissals under the *in forma pauperis* statute are in a class of their own, acting not as dismissals on the merits but, rather, as denials of *in forma pauperis* status. Typically, but not exclusively, such dismissals may serve as *res judicata* for subsequent *in forma pauperis* filings, but they effect no prejudice to the subsequent filing of a fee-paid complaint making the same allegations.

*Marts v. Hines*, 117 F.3d 1504, 1505 (5th Cir.1997) (en banc), *cert. denied*, 522 U.S. 1058, 118 S.Ct. 716, 139 L.Ed.2d 656 (1998).

While *Marts* dealt with *IFP* dismissals for frivolous or malicious complaints, the Fifth Circuit, in *Underwood*, extended the holding to cases in which a prisoner fails to exhaust administrative remedies.

> By choosing to file and pursue his suit prior to exhausting administrative remedies as required, Underwood sought relief to which he was not entitled-that is, federal court intervention in prison affairs prior to the prison having had the opportunity to address the complaint within its grievance procedures. We therefore affirm the district court's order dismissing Underwood's action with prejudice for purposes of proceeding *IFP*.

*Underwood, supra*, 151 F.3d at 296 (5th Cir.1998).

For the foregoing reasons,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** for purposes of proceeding in an *in forma pauperis* proceeding pursuant to 28 U.S.C. § 1915(d). Therefore, if plaintiff exhausts his administrative remedies with respect to the claims raised herein, he can present these §1983 claims again, but he may not proceed *in forma pauperis* to do so;

**IT IS FURTHER RECOMMENDED** that plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order [doc. 6] be **DENIED** as **MOOT;**

**IT IS ORDERED THAT** plaintiff's Motion for Appointment of Counsel [doc. 2] be **DENIED.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana, on October 20, 2006.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)